**Victor H. GOULDING, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 88 C 232.**

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1989.

Randall S. Goulding, Chicago, Ill., for plaintiff.

---

**14.** That consideration would of course appear to link up with the matters adverted to in n. 13.

Gerald C. Miller, D. Patrick Mullarkey, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Victor Goulding ("Goulding") sues for a refund of 1982 federal income taxes. In response the United States has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, the United States' motion is granted.

### Facts

Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Goulding (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987)).

In this case, however, Goulding (himself a lawyer) and his counsel (his son Randall Goulding) have totally ignored the requirements of Rule 56(e)—they have offered *nothing* in the form of admissible evidence (see *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) and cases cited there;

cf. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553).[1] Because Goulding's response under this District Court's General Rule ("GR") 12(m) admits all except Paragraphs 3 and 4 of the government's GR 12(*l*) statement,[2] the following statement reflects the only relevant facts in this case—all admitted except for Paragraphs 3 and 4, as to which both the government's statement and Goulding's response are reproduced:[3]

1. The taxpayer, Victor H. Goulding, at all times relevant to this action maintained his legal residence and last-known address at 300 N. State Street, Chicago, Illinois 60010.

2. The taxpayer, Victor H. Goulding, timely filed his 1982 federal income tax return on or about August 16, 1983.

3. [Government] On July 28, 1986, the Commissioner of Internal Revenue mailed a statutory notice of deficiency to the plaintiff-taxpayer, Victor H. Goulding; the notice was sent by certified mail and was addressed to him at:

300 N. State Street

Chicago, Illinois 60010

[Miller Declaration, ¶ 3 (Attachment A)]

4. [Government] The taxpayer, Victor H. Goulding, failed or refused to claim the envelope containing the statutory notice of deficiency and the proposed deficiency was assessed.

[Miller Declaration, ¶ 3 (Attachments C and D); Complaint, Exhibit A, page 2]

---

1. Goulding filed two legal memoranda in opposition to the government's motion, one filed September 15, 1989 and the other filed October 16. Because the first of those was accompanied by what purported to be, but was really not, a verification in evidentiary terms of everything said in the first memorandum, this Court issued a brief September 20, 1989 memorandum order striking it and stating that factual submissions not conforming to Rule 56(e) would not be taken into account. Goulding did nothing to cure the situation. Thus except for the 12–page September memorandum and the 14–page October memorandum (neither of which qualified for consideration in evidentiary terms, as contrasted with purely legal argument), Goulding has submitted nothing for consideration on the current motion.

2. As a result of the restructuring of this District Court's GR 12, the summary-judgment-linked requirements that had been GR 12(e) and 12(f) were relettered GR 12(*l*) and 12(m) respectively. Counsel for both the United States and Goulding, apparently unaware of that change, have employed the old designations in their statements. This opinion will therefore be compelled to follow their erroneous lead in citing to those statements hereafter.

3. What follows in the text are the verbatim GR 12(e) and 12(f) statements, omitting only the government's source references as to the admitted paragraphs. As for GR 12(e) ¶¶ 3 and 4, however, because Goulding does not admit those directly, the government's source references are included.

3 & 4. [Goulding] Plaintiff has insufficient information to either admit nor deny the allegations of Paragraph 3. Plaintiff affirmatively alleges that he never received said notice of deficiency and further alleges that Defendant did not take reasonable measures to furnish Plaintiff with a copy of said notice of deficiency, which could have been accomplished by regular mail, Plaintiff having been out of town at the time in which the notice of deficiency was allegedly sent by certified mail, no one being available to sign for and thus receive said notice of deficiency.

5. On or about June 19 and 25, 1987, the taxpayer paid the tax, penalty, and interest in the total amount of $45,919.72.

6. On or about July 2, 1987, the taxpayer filed an amended return, seeking a refund of the amounts paid in June, 1987.

7. On November 19, 1987, the Internal Revenue Service denied the claim filed on or about July 2, 1987.

8. The above-titled action, seeking a refund of the amounts paid in June, 1987 was timely commenced within two years of November 19, 1987.

■ No account may be taken of Goulding's GR 12(f) ¶¶ 3 and 4. What Goulding says in the first sentence there, an inaccurate attempted paraphrase of one of the three permitted responses to a *pleading* under Rule 8(b) (see *Gilbert v. Johnston*, 127 F.R.D. 145, 146 (N.D.Ill. 1989)), has no effect at all in the Rule 56 context. And what Goulding says in the second sentence, an "allegation," simply does not qualify as admissible evidence as Rule 56(e) requires—hence it may be disregarded entirely on the current motion (*Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510). Conversely, because the government's version of those two paragraphs (GR 12(e) ¶¶ 3 and 4) *is* properly supported in evidentiary terms, those paragraphs also stand as unrebutted *facts.*

Only one other factual matter needs to be set out. Goulding's claim for refund, which took the form of the amended return attached as Exhibit A to Goulding's Com-

plaint in this action and is the subject of admitted GR 12(e) ¶ 6, reads this way in its entirety:

The taxpayer never received the 90–day letter, Notice of Deficiency, allegedly mailed to his residence. Since no Tax Court petition was filed, the assessment was made. Accordingly, on June 18, 1987, the taxpayer paid the following amounts relative to the 1982 calendar year:

| | |
|---|---|
| Tax | $25,891.00 |
| Failure to Pay Penalty | 1,553.46 |
| Interest | 18,475.26 |
| TOTAL | $45,919.72 |

Since this amount was neither due nor properly assessed, and therefore illegally collected, the taxpayer hereby claims a refund of the $45,919.72 paid on June 18, 1987.

Since the taxpayer has never been provided with any Notice of Deficiency, it is unknown which amounts or items were adjusted.

### Scope of the Claim for Refund

■ Taxpayers seeking the refund of previously-paid taxes must, of course, apprise the government of just what they claim as the basis for their entitlement. As Treas.Reg. § 301.6402–2(b)(1) (reproduced in 26 C.F.R. under the same section number) says:

The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Goulding's already-quoted claim is unambiguous (and narrow) in scope: It says only that the government sent its assessment notice to the wrong place to reach him personally. Yet 300 North State Street, Chicago—the address to which the notice of assessment was sent—was not only Goulding's address listed in his 1982 tax return but remained his address even through July 1987, when he filed his refund claim (it was so listed in the amended re-

turn, Complaint Ex. A), and indeed it was still his address when he filed suit here.[4] And if there were any room for doubt (as there is not), the government's GR 12(e) ¶ 1—*admitted* by Goulding—identifies the same address as Goulding's "legal residence and last-known address" and says that was so "at all times relevant to this action."

Under those circumstances Goulding's only stated ground in his refund—his not having received the assessment—is wholly empty. Internal Revenue Code ("Code") § 6212(a), 26 U.S.C. § 6212(a), requires a notice of deficiency to be sent by certified or registered mail, and Code § 6212(b)(1) specifies the notice is sufficient "if mailed to the taxpayer at his last known address."

■ Goulding's admission that 300 North State Street filled that last description should really end the matter. Even in the context of a taxpayer's having *changed* addresses (as Goulding has never done either before or during the entire six-year period between his 1982 filing and the present), the case law firmly places the burden on the taxpayer to apprise the Internal Revenue Service ("IRS") of the need to send such notices to an address other than that reflected in the most recent tax return. *Tadros v. Commissioner*, 763 F.2d 89, 91 (2d Cir.1985) (citations omitted) explains the applicable principles:

> Since the 90–day period of § 6213(a) is a jurisdictional requirement ..., failure to file within that time period requires dismissal of the petition. The 90–day period begins to run on the day the notice of deficiency is mailed.... Actual receipt of the notice is unnecessary; if it is mailed to the taxpayer's last known address it is adequate for the purposes of the statute....
>
> The "last known address" is "the address where the Commissioner reasonably believed the taxpayer wished to be reached." ... It has been defined as the taxpayer's "last permanent address or legal residence known by the Commis-

sioner or the last known temporary address of a definite duration to which the taxpayer has directed the commissioner to send all communications." *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), *aff'd mem.*, 538 F.2d 334 (9th Cir.1976).

Although the mailing of notice to the taxpayer's last known address may not always provide actual notice to the taxpayer, this allowance for constructive notice protects the IRS from the overwhelming administrative burden of ascertaining each taxpayer's exact address at any given time.... To further this purpose, it becomes the responsibility of the taxpayer to communicate to the commissioner a "clear and concise notification" of any change in address.

In our own Circuit, *McPartlin v. Commissioner*, 653 F.2d 1185, 1189 (7th Cir.1981) has announced the identical principle:

> As stated, the principal issue in the instant case is whether the Commissioner's April 13, 1978 mailing of the notice of deficiency was sent to petitioners' "last known address" within the meaning of 26 U.S.C. § 6212(b). That phrase is defined by neither the Internal Revenue Code nor the regulations promulgated thereunder by the Commissioner. Certain principles, however, have evolved from the substantial body of case law interpreting section 6212(b). In *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), *aff'd mem.*, 538 F.2d 334 (9th Cir.1976), the Tax Court defined "last known address" as "the taxpayer's last permanent address of a definite duration to which the taxpayer has directed the Commissioner to send all communications." As a general proposition, the Commissioner is entitled to treat the address of the taxpayer appearing on the return being audited as the taxpayer's "last known address" absent "clear and concise notification from the taxpayer directing the Commissioner to use a different address."

---

**4.** Complaint ¶ 3 reads:

The Plaintiff, the taxpayer who is owed the amounts in question, maintains legal residence at 300 N. State Street, Chicago, Illinois 60010.

Accord, such cases as *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir.1984).

All Goulding urges to counter the uniform decisions to that effect is his assertion—unsupported in evidentiary terms [5]—that the IRS agents who had been involved in the examination that led to the deficiency assessment "were well aware of the fact that Plaintiff was frequently out of town and in a semi-retired state due to his advanced age—now 75 years old" (P. Oct. Mem. 2) and—also unsupported—"that most Internal Revenue Service filings by Plaintiff reflected the office address, 77 West Washington, as his mailing address, not his residence of 300 North State Street" (*id.*). But the former assertion, with its notion that the burden of making sure that someone gets his mail is to be placed on the government (dealing as it does with millions of taxpayers) rather than on the individual, is insupportable. And the latter assertion flies in the face of the proposition uniformly established in the quoted cases and numerous others: that anyone who wishes to change his address for notice purposes from what has been and continues to be his residence and "last known address" (the statutory standard) must record that desire in a formal way so that the government can itself be on notice and act on it.

■ Goulding's sole asserted ground in his claim for refund, the nonreceipt of the statutory notice of deficiency, therefore fails. And his present effort to assert new merits-related grounds must also fail, this time because of the combination of Treas. Reg. § 301.6402–2(b)(1) and the doctrine that courts are without jurisdiction to consider grounds not first raised in a timely filed claim for refund.

One of the corollaries of the doctrine of sovereign immunity (applicable to taxpayer refund suits, *Mallette Bros. Construction Co. v. United States*, 695 F.2d 145, 155 (5th Cir.1983) and cases cited there) is not only

that the United States as sovereign cannot be sued unless it has expressly consented, but also that once its consent has been given, the plaintiff must conform to the conditions on suit prescribed by the sovereign (*id.*). Code § 7422(a) conditions taxpayer refund suits on the prior filing of a claim conforming to Treasury Regulations, and the cases teach that the administrative claim sets the boundaries outside of which the subsequent lawsuit cannot stray (see, among the host of cases so holding, the pronouncement of our Court of Appeals in *Belt Ry. Co. of Chicago v. United States*, 567 F.2d 717, 719–20 (7th Cir.1977)).

In sum, Goulding's actual claim for refund—the nonservice of the deficiency notice—is without merit as a factual and legal matter. And Goulding's attempt at expanding the grounds of that claim fails on jurisdictional grounds, except perhaps for the waiver-estoppel issues that remain for brief discussion. This opinion therefore turns to the latter.

### *Waiver and Estoppel*

■ Goulding Oct. Mem. 8–14 argues that the government has waived any objection to his merits-related arguments because its rejection of the refund claim recited, in the space designated for "Reasons for Disallowance" (Complaint Ex. B):

### Per Audit Determination

As Goulding would have it, that reference to the substantive audit report opens up to scrutiny in this action any of the factors entering into that underlying determination that Goulding wants to challenge. Because that final Goulding October memorandum was filed contemporaneously with the government's Reply Memorandum in support of its Rule 56 motion, the government anticipated essentially the same argument in estoppel terms, rather than as a waiver defense.

---

**5.** It should be reiterated that what follows in this paragraph of the text as Goulding's purported justification can (and properly should) be rejected by this Court as not part of the court record. It reflects the unsupported assertions in Goulding's October legal memorandum, *not* evidence available for consideration under Rule 56(e). It is nonetheless mentioned to demonstrate that Goulding could not avoid summary judgment even were he to seek to cure his procedural shortcomings.

If this Court is truly without jurisdiction to hear a taxpayer's suit that goes outside the administrative claim, neither waiver nor estoppel would seem available to Goulding to confer jurisdiction. At least that is the effect of the absence of true subject matter jurisdiction. But as will be seen, a number of reported cases (at least dealing with the waiver issue) address the matter on the merits rather than in jurisdictional terms.[6] This opinion will therefore deal with Goulding's contention—whether framed in estoppel or waiver terms—as well.

■ First as to estoppel, it is true that one District Court has upheld an estoppel argument under circumstances like those in this case—where the United States' notice of disallowance of the taxpayer's claim listed as the ground for disallowance "Per Audit Determination" (*Santa Cruz Building Association v. United States*, 411 F.Supp. 871, 877 (E.D.Mo.1976)). But that ruling (whatever its arguable propriety in the special circumstances of that case) is at odds with the extremely limited availability of estoppel against the United States. To estop the government, a taxpayer must establish not only the conventional elements of that doctrine (*Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir.1982)[7]) but also that the government's actions amounted to affirmative misconduct (*Edgewater Hospital, Inc. v. Bowen*, 857 F.2d 1123, 1138 (7th Cir.1988)[8]). Goulding fails on every substep as well as every step of that journey, and no element of estoppel

permits him to bootstrap himself into court on grounds never mentioned in his refund claim.

What of the availability of waiver, the sole ground advanced by Goulding that merits any real discussion?[9] In *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945) Justice Frankfurter said for the Court:

> Candor does not permit one to say that the power of the Commissioner to waive defects in claims for refund is a subject made crystal-clear by the authorities.

After expanding on the reasons for the requirement that taxpayers be precise in particularizing their grounds for seeking tax refunds, Justice Frankfurter went on to say (*id.* at 297, 65 S.Ct. at 1164):

> Since, however, the tight net which the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it. The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim.

It should be emphasized that "merits of the claim" speak of the *claim itself*—not, as Goulding would effectively argue, of what contentions the taxpayer may have asserted before a deficiency was ever assessed and the taxes based on that assessment were paid.[10]

---

**6.** It may be that a distinction may be made in that respect between a limitation on suit established directly by Congress and one established by Treasury Regulations (though pursuant to congressional authorization). There is no need to pause for an inquiry along those lines, however, given the merits-related case law dealt with later in the text.

**7.** *Portmann, id.* at 1162–65 confirmed that estoppel, although not totally unavailable against the government as some earlier Supreme Court authority had suggested (see *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)), could at most be invoked in limited circumstances involving government misconduct.

**8.** *Edgewater Hospital, id.* confirms the *Portmann*-identified factors, importantly including

the "require[ment] that the party asserting estoppel establish that the government's action amounted to affirmative misconduct."

**9.** Goulding Oct. Mem. 7 also makes what has to be characterized as an entirely frivolous argument: that his previously-quoted refund claim was premised not only on the basis "that the amount was not 'properly assessed' but in addition that the 'amount was [not] due' either." That, he says, means that *every* argument he now wants to make against the deficiency can be asserted in this lawsuit. That position simply makes a mockery of the specificity requirement of Treas.Reg. § 301.6402–2(b)(1). It is rejected out of hand.

**10.** Again it should be repeated, to underscore the unavailability of waiver to Goulding, that his *claim* challenged only the nondelivery of the

Nothing in the intervening near-half-century since *Angelus Milling* has added the missing crystal clarity referred to there. Goulding has adduced a smattering of cases (none of a vintage newer than the past generation, falling midway between *Angelus Milling* and the current date) in which courts have found waivers under the very different circumstances that were before the courts in those cases. But *not one* of those cases would support such a finding of waiver—of the Commissioner's intentional disregard of his known rights—under the circumstances here. It really requires an impermissible quantum leap to read into the three words "Per Audit Determination" an affirmative decision by IRS not to hold Goulding to what he himself selected as the *sole* ground for challenging the deficiency assessment (the lack of proper notice). Treas.Reg. § 301.6402–2(b)(1) is itself too crystal clear, and the "Per Audit Determination" response is too opaque to be read as a waiver of that crystal clear requirement.[11]

In sum, waiver (like estoppel) cannot provide Goulding a springboard to overleap the self-imposed limitations of his claim for refund. This action must fail as a consequence.

### Conclusion

There is no genuine issue of material fact, and the United States is entitled to a judgment as a matter of law. This action is dismissed with prejudice.

deficiency notice to him. This opinion has already dealt with the "merits" (or really the lack of merit) of that claim.

**11.** Goulding Oct. Mem. 11 says that the term "Per Audit Determination" shows "the Internal Revenue Service understands the grounds of the claim." More accurately, that term refers only to the grounds of the IRS determination of the *deficiency.* As to the grounds of the claim, as already pointed out (see n. 10) those grounds are unequivocally demonstrated by the claim itself to be limited to the alleged improper notice of deficiency.